Case 23-14-52, Kenneth Boyle v. Ford Motor Company. Arguments not to exceed 15 minutes per side. Mr. Parris, you may proceed for the appellate. Good morning, Your Honor. May it please the Court. My name is Simon Parris from Salts, Montgomery, and Bendusky. On behalf of Plaintiff Appellant Kenneth Boyle, I would like to reserve five minutes for rebuttal. Thank you. Your Honor, we're here today to address an issue that was an error committed by the District Court in dismissing Plaintiff's Breach of Express Warranty claim at the pleading stage. There are three distinct reasons why this error was committed by the District Court. What this case arises out of is a written warranty that Ford provides to both its completed vehicles, like a Ford Bronco, and its incomplete vehicles, which operate under a different set of regulations. Those regulations relate to vehicles that are manufactured in two parts. The first part being the incomplete vehicles. You say regulations. Are those NHTSA regulations, National Highway Traffic Safety? They're CFR regulations registered under the CFR. They're under the Motor Vehicle Safety Act. They are what's set forth. But they're created by NHTSA? NHTSA? Yes, I believe they're somewhat authored by NHTSA, and they are what's set forth how Ford can sell a vehicle, incomplete vehicle, and allows the final stage manufacturer, which is someone who converts that incomplete vehicle, such as the Ford cutaway that's relevant here, into an RV and then sells it to an end user so that they can comply with certifications under the law. Did your client buy the cutaway directly, or did he just buy the RV from Thor? No, so he bought the RV from Thor. The cutaways are not available to the end user like that because all they are is a chassis, and as the regulations dictate... Is it illegal to drive them on the road? They're not capable of being driven on the road because as they start out and enter that final stage manufacturer, they're not really roadworthy. They have all the components to operate, but they only have these slats on the back, so they need to be completed until whatever the finished product, the incomplete vehicle documents from Ford says can be done. Here, it's not a collection of parts that are delivered. The incomplete vehicle has certain requirements that have to be delivered to the final stage manufacturer, and that's as if that vehicle is ready to go on the road once completed. It has the steering, the suspension, the engine, all the components as if it's a completed vehicle. Is there anywhere in the papers that says who bought the cutaway from Ford? I couldn't find it. There is, Your Honor, in the complete and in the incomplete and in the allegations are from Ford it goes to, it is sold to Thor. Thor is a final stage manufacturer. It is sold to Thor. Correct. Then Thor purchases it. That's in the complaint somewhere? It is in the complaint. I missed it. That Thor purchases it and then finishes it into what is intended to be a completed vehicle for sale to the end consumer. What is the problem with the cutaway after it leaves Ford? In other words, you're suing Ford, right? Correct. They are the warrantor. What exactly is the problem? Because it seems to me that Ford knows that it's going to be modified. Somebody has to do some work to it to make the end product, right? Correct. It seems to me you're saying, well, when Ford does its work or anybody does its work, it necessarily is going to affect the steering of the vehicle. And that's a Ford issue? What does Ford do that's problematic? Ford's problem, it's not necessarily going to affect the steering. Ford's problem is that when it sells the incomplete vehicle, that vehicle is rated up to a certain weight to put on there. The final stage manufacturer can't come in and start tinkering with all the components, the steering, the engine, the suspension, because at that point, then it actually jeopardizes the work that Ford has done in designing and engineering that vehicle so that it is safe for the roadway. And then the next stage is that that final stage manufacturer, which you'll learn in Discovery, which we had Discovery, basically says, wait a second, I can do what's called pass-through certification so that I can sell that vehicle on the roadway. What that is is it allows that end-stage manufacturer to rely on what Ford has done in crash test worthiness, certifying the quality of the vehicle, its steering, its suspension, to know that it can handle a gross vehicle weight of, in this circumstance, over 14,000 pounds. But some of these, what you call end-stage manufacturers, can put all sorts of different things on it, right? Some of them might be heavier. Some of them might be lighter. Ford directs what they can put on. So Ford, when it sells the incomplete vehicle, says it can be manufactured for these purposes. This one happens to be an RV. And with that direction, it also provides the end-stage manufacturer with an amount that it can't exceed. So they can put weight on it. They can put something less than the GVWR. But the GVWR cannot be exceeded and is a number set by Ford to which the end-stage manufacturer must comply because that is what the vehicle is capable of doing. Your fellow here, Boyle, was indeed that Ford did it right. They didn't exceed the GVWR? Right. It's an allegation in the complaint that it was manufactured within the GVWR. So therefore, it should have performed as Ford wanted. That is why you sue Ford because they provide the warranty to the incomplete vehicle purchaser ultimately. The ultimate problem was that the vehicle pulled to the left. Is that right? Yes. It came out of alignment. Okay. And how do you know that it wasn't Thor that, while it didn't exceed the gross weight, they may have put a little too much weight on the left side as opposed to the right side? And that's what caused it to pull to the left. Well, first of all, I appreciate that question in the sense that, you know, the actual cause is unknown because discovery hasn't occurred. We don't know. There's never going to be evidence in this case that says it left Ford's control and went to Thor with it operating perfectly aligned or misaligned because it wasn't driven. It's not what they do. Which when it comes in, you know, so the end stage manufacturer does do that. And, you know, that's why Ford warrants that alignment warranty. You could have alleged that it left Ford defective. And I didn't see that you did that. Well, there is an allegation in there which is important to the case because how it left Ford was with a fixed caster and camber. So when a fixed caster and camber prevents the adjustment that's necessary to perfectly align, that may be necessary to align the vehicle. Now, you can't go in and start changing the caster and camber. That's a design defect, right? Well, it's a misrepresentation because they represent it. But you don't have a design defect claim, right? We do not have a design defect claim. It seems to me that if they put in something that's fixed or shouldn't be fixed or isn't easily adjusted or shouldn't require additional parts to adjust, all of that would be design defect, right? And that's off the table because we don't have that allegation. Respectfully, I don't believe it all needs to be a design defect because their marketing materials deliver the vehicle representing that they did do that when in fact they didn't. So that's why we have the Farnam Deceptive Unfair Trade Practices Act claim because that's a false representation. And by putting the incomplete vehicle out there for that to occur and deliver it to the end consumer knowing that that's an adjustable caster and camber, and what an adjustable caster and camber does is allow for any modifications if, as Your Honor suggests, that it was a little bit more on the left or a little bit more on the right, you can fix that with what was supposed to be included in that vehicle. Well, except that you've got this alteration or modification provision that says Ford warranty doesn't cover a vehicle that's been altered or modified, and that's what Ford did. But that's the whole point, Your Honor, in the sense that that's illusory because when you sell a vehicle that's an incomplete vehicle and you sell that vehicle with the express intention it be modified for this purpose, you can't very well hand Ford the keys to sit there and say, well, now anything that's covered by my warranty, I'm going to decide whether I will or will not provide that coverage because there was a modification. What do we not know? We don't know that there was a modification. Doesn't the warranty also cover other things like oil changes, tire alignments? And as I read it, that does carry through to a later purchaser. Yes, the warranty carries through to the later purchaser. If the bottom falls out of the oil pan, that would be covered by the warranty. If Ford chooses to cover it. Well, as I said, if it was the original defect, it's not that nothing is covered, it's that nothing is covered that gets adjusted later on. I believe that's correct, Your Honor, if I understand your question or your statement correctly, because what didn't occur here and what we know for a fact didn't occur here was the final stage manufacturer made any modification to any component that's relevant to this case that Ford delivered. So without that modification. Well, maybe they did because maybe the weight distribution of the RV caused it to pull to the left. Well, Your Honor, that would be contrary to what's pled. You know, and what's alleged. And it's not really even a contested fact that they didn't modify those pieces. But you say that you need discovery and you don't know exactly what happened, but you do know that it was Ford, right? I mean, so I don't have any discovery. I need to know this. But it's definitely not Ford RV. It's definitely Ford's problem, right? Well, I think discovery would reveal whether it is Ford or Ford RV's problem. But normally you'd probably sue the public. But my allegations are that it's Ford. Okay, I understand. Why didn't you sue Thor as well? Because they're not the warrantor. Because Ford is the warrantor of the issue that we're complaining about. Well, you don't know that for sure. I mean, it might be Thor's fault, let's say, that it required these aftermarket parts to correct the problem. Your Honor, with all due respect, the reading of the regulations kind of lends itself to the contrary. That this falls squarely on the hands of the incomplete vehicle manufacturer when they deliver the product to the people, the end-stage manufacturer, and it's passed through unmodified. You know, to the extent, I mean, there's a lot of arguments in there that this alteration and modification is completely inapplicable here because it's carved out. But, you know, that being said, Your Honor, the reality is that this is a Ford problem. You know, it's a Ford issue. They delivered an incomplete vehicle with these components. These components were not altered, were not modified. All right? Did Thor provide any warranty at all? They warrant other items, yes, like to the things they did. But when we contacted them for their concerns over the vehicle, the communication obviously led us to Ford and their allegations regarding the complaint. Sure, they didn't want to assume the responsibility, but that doesn't mean they're not responsible. It just means they, just like Ford's denying responsibility. I understand. You're sort of caught in the middle at this point. And I hear you, Judge Gellman, and the truth is it's the same thing Ford's arguing here. They're just pushing it off on Thor saying it's their problem, not mine. But they are the defendant in this case. The allegations support the claim against them, at least support going to discovery to learn what they should say. I'm happy to field anything else the panel may have before rebuttal. Your time has run, but we'll hear you. Thank you. Good morning, Your Honors. Paul Hudson on behalf of Ford Motor Company. Your Honors, the fatal flaw in this case is that plaintiff does not allege that this vehicle was misaligned when it left Ford's factory. And instead, all of plaintiff's allegations I mean, somebody screwed up here, right? I mean, he's out 900 bucks or whatever it is for something that probably should have worked when he got it. So the question is who should pay for that? Surely not the plaintiff, right? And I think the key is that all of the plaintiff's factual allegations in the complaint are that the misalignment was caused by adding an RV on top of this vehicle, right? We detail those allegations. But your client understands that that's going to happen, sets a weight limit. We accept as true at this point that the modification didn't exceed the weight limit. What else could the problem have been? I mean, you're saying, well, it could have been the way that Thor did the work. That would have caused the problem? I think the point is once this vehicle leaves Ford's control, these final stage manufacturers are doing all sorts of things to the vehicle, right? They're building dump trucks, RVs, utility vans, ambulances. And as Judge Gilman noted, take an RV for example. I mean, they're adding bedrooms and kitchens and couches. And if they're lining all those things up on one side of the vehicle, so it's riding like this, there is no way that Ford can warrant that that vehicle is going to be perfectly aligned as it's going 65 miles an hour down I-75. I think that's the key of the case. And that's why Ford expressly disclaims anything, any damage caused by alterations or modifications. So should poor Mr. Boyle have tried to find an end stage manufacturer who would warrant these? Yes. I mean, as a factual matter, do we know, does anybody do it? Or is everybody in, if you're going to have this hybrid creature, you're just on your own? Yeah, I think, I don't know the answer to whether other RV manufacturers warrant this or not. Clearly Ford doesn't. From where I'm standing, they probably should, right? If they're adding all of these things to the vehicle, they know how to turn wrenches. They know how to, they should be making sure that their vehicles are aligned at the final stage of that. As far as that, I mean, I don't know. Is this a problem every time Ford sells a cutaway that people are screaming about misalignment? I don't think that's the allegation in the complaint, no. Certainly some number do. I mean, they do make those allegations that this is not a, it's not something that nobody ever heard of as happening to an end stage purchaser. But I think then the question is, I mean, does Ford's warranty cover this or not? And our position is that this quite plainly does not cover this situation because it makes good sense that Ford can't warrant what these other manufacturers are doing to these vehicles. It also doesn't make sense, the plaintiff's argument, that, you know, that there's a stand-alone promise to do tire balancing and wheel alignment that overrides the exclusion of damage caused by alteration complications. The point I was making to your colleague is that the fact that those warranties do exist, do carry through, means that it's not wholly illusory. It may be it's not as good as he wanted, but it's not nugatory. Well, that's right, and that's what Judge Stee recognized below, is that this is not an illusory warranty because if there is actually a problem with the alignment of the vehicle when it leaves Ford factory, then Ford is going to cover that. If this fixed versus adjustable camber is a problem for everybody, then that would be a design defect. They might have a claim if they had litigated it that way. And as Judge Nalbandian recognized, there's no design defect claim here. It's essentially saying that... Have you ever had design defects? If you're the big Ford lawyer, do you know other people who've made design defect claims? I am not aware of any design defect claim with respect to the alignment of this cutaway vehicle. But to go back to the point where the plaintiff is claiming now that they need discovery to sort of figure out what caused this alignment, I think that has things backward. It is their burden to allege that to come within the scope of this limited warranty that there was a problem when it left Ford's factory. As the district court recognized, not only do they not include that allegation, they in fact include all these other allegations that the problem is caused when the RV manufacturer is building out the vehicle. So this isn't a problem that they could solve on a remand. It's likely why they didn't even ask for leave to amend the complaint in the district court. If this were just a warranty claim against Ford for a factory misalignment, this is a few hundred dollar claim in circuit court in Land O'Lakes, Florida or wherever. They deliberately chose to plead this as a class action. I have a question about the deceptive trade claim. I'm curious. I guess you do represent that the caster camber is adjustable or can be adjusted, but there's no suggestion, I guess, that you need an aftermarket part to do that. I'm curious why that's not at least partially deceptive. I think the district court got it right there that given the nature of these vehicles, the district court said given the incomplete nature of the product, the fact that aftermarket parts may be required to adjust the alignment of a completed vehicle is not unfair or objectively deceptive. And it was not unfair or deceptive for Ford to have this limited warranty and stick to the plain language of it and clearly disclose that we are just not going to cover anything that's caused by, built out by these final stage manufacturers. Well, but it's slightly different than that, isn't it? I mean, this is just a representation or a marketing thing or whatever it is that would say something like, hey, you can adjust this. It doesn't say, oh, by the way, you're going to have to spend an extra grand to do it. But, I mean, I don't know if it's even in the fine print. I mean, it just seems like it's not there. So I don't know, I mean, I don't know how deceptive that is. But, I mean, it seems like it's maybe not giving full information. I think, frankly, this is more of a business issue between Ford and 4RV. We also have a little bit of a litigation lens here because, well, why doesn't Ford just include the adjustable part? These final stage manufacturers are adjusting not just this one system, but should Ford also include another valve to adjust the fuel lines so they can add the generator? Should Ford add extra fuses when they adjust the electrical systems so they can power their microwaves? The point is these final stage manufacturers know exactly what they're getting from Ford, and they know, if they look at Ford's warranty, that if they cause issues with alignment, then they're going to be responsible for it. And that's very clear. Are you saying that means why they don't fix this when they deliver it? I mean, in trying to figure out somebody ought to be responsible for something, is it that, as a generality here, it should be the RV person who does this stuff before they deliver it to the customer, in which case then you're not going to need the customer to do something. I think that's exactly right. I mean, not to throw it all on Thor, but as amongst all these end stage people, they should fix whatever things need to be fixed and roll it into the price that they charge, so that Mr. Boyle pays the $1,000 up front, not the aftermarket. I think that's exactly right. Let's just think about it practically. If this RV manufacturer lines this thing up, and it's sitting like this as it comes off their lot, it's their responsibility to adjust the alignment. This was actually ultimately fixed by a Ford dealership, right? The second Ford dealership he took it to, Mr. Boyle. I think that's right. And just for the very quick clarification of how this gets to the final consumer, I know Judge Boggs had that question. Technically, Ford distributes it to a Ford dealer. Ford dealer sells it to Thor RV. Thor RV then sells it to General RV, which is its RV dealer, and then General RV is where Mr. Boyle purchased the RV from. And then it goes back to Ford to finally fix it. It's like a big circle here. And look, I understand. Our position is not that there's no remedy. He's caught in no man's land. Practically speaking, the thing that jumps out here is, why is there no claim here against Thor RV? They're a Ford. We have a relationship, obviously, with Thor RV. We're not trying to push everything off on them. But that is what jumps out in this sort of claim that Plaintiff is making here. In this game of musical chairs, you want Thor to be the seat that gets stuck. Well, you know, but for good reason. Because according to Plaintiff, the misalignment was caused by the build-out process at Thor RV. Well, they say it was caused by, but it was because Ford didn't make it adjustable. Isn't that sort of the... Well, it didn't make it adjustable in the preferred...  Adjustable enough, or easily adjustable enough, I think is the claim. Our position is Ford had no legal duty to do that. And moreover, Ford expressly made clear that there was going to be no coverage in this sort of situation. Unless the Court has further questions... And there was no... Therefore, there was no direct relationship between Ford selling the cutaway to Boyle. That is, there were all these steps in between where Boyle was not dealing with Ford at all. Is that correct? Well, that's certainly true as a factual matter. But the limited warranty does carry all the way... Right, because the limited warranty does still apply to the oil changes and tire changes and all that sort of stuff. That's exactly true. If they were not caused... If the issue was not caused by alterations or modifications by... But for example, in my hypothetical, there's some kind of oil pan issue, at least on its face, it probably was Ford's if the oil falls out. That's right. And that's why this is not an illusory warranty by any stretch of the imagination. There are all sorts of issues that Ford would still cover on this field. Or at least if they sued you for it, you would go look and say, oh, here's where Ford punched a hole in it. Well, Ford deals with warranty claims every day, right? And they don't have to get sued to fulfill those obligations. But when there is a clear exclusion for... When the issue is caused by a later stage manufacturer, Ford doesn't cover it. Thank you very much. Thank you. Rebuttal? Thank you. Just make a few brief points, Your Honor. From the initial point, Ford's entire defense of this case, and it's incorrect at the outset that the allegation is that the cause of the misalignment is all on Thor and the weighting of the vehicle. That is what they say. They do add the weight to the back, but the allegation is not that the weight causes the misalignment. The allegation is that the build-out, and when it's delivered, is misaligned, whether it's misaligned because it comes out of Ford's vehicle process that way, because of the lack of an adjustable caster camber. But to jump to the conclusion that it's misaligned as a result only of what Thor did is something that should not be done on the pleadings. This was erroneous by the lawyer. Does your pleading actually allege that it was defective or out of alignment when it was sold by Ford, when it left Ford's control? It does not allege that. But the first time that... And you can't allege that because there's no way to know that. Well, but you can allege it, and then they can deny it, and then you maybe get discovery on it. I mean, isn't that more the way litigation goes? I guess you could allegedly do that. I mean, the contract says this doesn't cover things that happen after we leave it, so that the litigator would mostly say, all right, I'm alleging that your problem is there. It's plausible that it is, so now let's litigate that. And I hear the court on that. The fact of the matter is that that is not in the complaint. I guess you arguably could include it in the complaint, but I think as the allegation stands, it's unnecessary to establish that. It's unnecessary to establish it because, as you will learn, the causation issue as alleged in the complaint is not uniformly based on the addition of the weight. There's two things. That vehicle is sold by Ford to handle that weight as is. It has to be delivered capable to handle that weight as is. During Mr. Hudson's argument, the court, he said, it's not illusory. This is the other point. This warranty, this provision is illusory as it relates to incomplete vehicles. I understand completely when Ford delivers a completed vehicle, like a Ford Bronco, and someone goes in and puts lifts on it or changes it or changes that modification. Absolutely, that provision is warranted there. But here, when it's sold to an RV final stage manufacturer to be converted to an RV, and then you hand Ford this one that can say, if I feel like covering it or I don't, that is illusory under Florida law. There's two terrific cases that talk about it. They're cited in our briefs, but Princeton-Holmes and Johnson Expressions. In Princeton-Holmes, there's a provision in the contract that has to be completed. The construction has to be completed within a certain period of time. But the timing doesn't start until a date that Princeton-Holmes essentially picks. So by creating and giving that power and discretion to a contracting party, that at its whim it can say yes or no to set that timing provision, the 11th Circuit determined in that case that, listen, that's an illusory provision and you can't trigger and use it to use other items. Similarly, a right of first refusal in the Johnson case was stricken from that contract for the same purpose. Here it's the same thing. Judge Boggs has made the point of articulating about, well, there's other things that will be covered by the warranty, so it can't be purely illusory. That's a red herring. That is incorrect, Your Honor, because it's only covered by the warranty if Ford chooses to say it. If at its will it says, okay, I'll cover that, because otherwise all it has to do is what it did here. And talking about the whim, I mean, everything that's in a written contract is put into it at the whim of one side or the other. That doesn't sort of move me much. The thing that you said about the Princeton case where they got to choose a date that started a clock, I mean, assuming that that's the way it comes out, here it's in the papers when you buy it. There's no whim once it leaves the factory, is there? No, it's in the agreement. It's in the warranty documents. But what that provision does is allows Ford to say at its own, that damage was caused by a third-party alteration or modification. They can't tell you what the alteration or modification that caused this is, you know, but they tell you that they're excluding it. That's what they've done to Plaintiff Boyle. They have said, listen, I'm not covering you because someone else did that. I have no idea really how it happened or what caused it, you know, they say, because they can't articulate it in their papers or to this Court. But the bottom line is by empowering them that way, it renders that provision completely illusory in an incomplete vehicle context because it's sold knowing you have that back door. You can control the coverage by your unilateral election to say it's caused by an alteration. Is that true of any exclusion? That is, if it's excluded, let's say, if you put too much weight on it, and you came in and you said it wasn't too much, and Ford says there is too much, and then you litigate it. Again, that's not a whim, that's a defense based on what you put in the contract. But that's the whole point is when you put, just like these cases, when you put a provision in the contract that invests the entire power with one party to say yes or say no, and you do it knowingly, it's not as if to complete a vehicle. You do it with the intention and understanding that it's going to be altered and modified. You strip the other contracting party of any consideration relating to the promise that was delivered. I think we understand your position. I appreciate your time and thank you very much. The case has been submitted.